

FILED & ENTERED

MAR 08 2017

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY evangeli  DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re:    BBeautiful, a California LLC,<br>Debtor | Case No.:    2:16-bk-10799-ER<br>Adv. No.:    2:16-ap-01506-ER |
| BBeautiful, a California LLC,<br><br>Plaintiff<br><br>v.<br><br>Rieke-Arminak Corp., a Delaware Corp., et al.,<br><br>Defendants | **REPORT AND RECOMMENDATION OF THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY JUDGE, TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, CONTAINING PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW, AND PROPOSED FINAL JUDGMENT**<br><br>Date:    March 8, 2017<br><br>Time:    10:00 a.m.<br><br>Location:    Ctrm. 1568<br>Roybal Federal Building<br>255 East Temple Street<br>Los Angeles, CA 90012 |

This Report and Recommendation is submitted by the undersigned Judge of the United States Bankruptcy Court for the Central District of California (the "Court") to the United States District Court for the Central District of California (the "District Court") pursuant to 28 U.S.C. § 157(c)(1) and Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9033, based upon the

Court's determination that the Court lacks constitutional authority to enter a final judgment with respect to the matters addressed herein.[1]

---

[1] In preparing this Report and Recommendation, the Court considered the following pleadings and papers:

1) Plaintiff's Motion for Partial Summary Judgment:
   a) Notice of Motion and Plaintiff's Motion for Partial Summary Judgment ("MSJ") [Doc. No. 33]
      i) Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law in Support of Motion for Partial Summary Judgment ("SUF") [Doc. No. 34]
      ii) Declaration of Helga Arminak in Support of Plaintiff's Motion for Partial Summary Judgment [Doc. No. 35]
      iii) Proposed Judgment and Order Granting Plaintiff's Motion for Partial Summary Judgment [Doc. No. 36]
      iv) Proof of Service [Doc. No. 37]
      v) Notice of Errata Regarding Notice of Motion and Plaintiff's Motion for Partial Summary Judgment [Doc. No. 38]
   b) Defendant's Response to BBeautiful's Motion for Partial Summary Judgment [Doc. No. 61]
   c) Plaintiff's Reply Memorandum of Points and Authorities in Further Support of its Motion for Partial Summary Judgment [Doc. No. 62]
2) Defendant's Motion to Dismiss:
   a) Defendants Rieke-Arminak Corporation, Trimas Corporation, Rieke Corporation, and Arminak & Associates, LLC's Notice of Motion and (1) Motion to Dismiss Debtor BBeautiful's First Amended Complaint for Lack of Subject Matter Jurisdiction (FRCP 12(b)(1)); (2) Motion to Dismiss Debtor's First Amended Complaint for Failure to State a Claim (FRCP 12(b)(6)); or in the Alternative (3) Motion for Abstention (28 USC §1334(c)(1)) ("MTD") [Doc. No. 53]
      i) Request for Judicial Notice in Support of Motion to Dismiss [Doc. Nos. 54–58]
      ii) Proof of Service [Doc. No. 59]
   b) Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' (1) Motion to Dismiss Debtor BBeautiful's First Amended Complaint for Lack of Subject Matter Jurisdiction (FRCP 12(b)(1)); (2) Motion to Dismiss Debtor's First Amended Complaint for Failure to State a Claim (FRCP 12(b)(6)); or in the Alternative (3) Motion for Abstention (28 USC §1334(c)(1)) (includes Declaration of Helga Arminak, Appendix of Unpublished Authorities, and Request for Judicial Notice) [Doc. No. 63]
      i) Proof of Service [Doc. No. 64]
   c) Defendants Rieke-Arminak Corporation, Trimas Corporation, Rieke Corporation, and Arminak & Associates, LLC's Memorandum of Points and Authorities in Reply to Plaintiffs' Opposition [Doc. No. 66]
      i) Defendants' Appendix of Unpublished Opinions in Support of Their Motion to Dismiss [Doc. No. 67]
      ii) Proof of Service [Doc. No. 68]
3) Other relevant papers:
   a) Defendants' (I) Notice of Motion and Motion to Stay All Proceedings in Adversary Proceeding No. 2:16-ap-01506-ER Pending the District Court's Ruling on Their Motion

For the reasons in the Final Ruling set forth below, the Court recommends that the District Court:

1) Enter judgment that BBeautiful is entitled to a declaration that it may (a) sell the Permitted Beauty Products[2] and may (b) acquire packaging for the purpose of manufacturing the Permitted Beauty Products.

2) Dismiss BBeautiful's claim that it is entitled to a declaration that it may sell stand-alone packaging products, on the ground that the claim is not ripe for adjudication, with such dismissal being without prejudice to BBeautiful's ability to file a new complaint if and when the packaging claims become ripe; but deny BBeautiful leave to amend the existing complaint, based upon the finding that at the present time, BBeautiful can allege no facts showing that its packaging claims are ripe.

3) Dismiss with prejudice BBeautiful's claim for tortious interference with prospective economic advantage.

4) Dismiss with prejudice BBeautiful's claim for violation of the UCL.

## **Final Ruling**

## **I. Background Facts**

### **Ms. Arminak Founds and Operates BBeautiful and Associates**

BBeautiful, LLC ("BBeautiful") commenced a voluntary Chapter 11 petition on January 22, 2016. Helga Arminak ("Ms. Arminak") is the operating manager of BBeautiful. Declaration of Helga Arminak in Support of Plaintiff's Motion for Partial Summary Judgment ("Second Arminak Decl.") [Doc. No. 35] at ¶1. Ms. Arminak founded Arminak & Associates, LLC ("Associates") in 1999, and founded BBeautiful in 2006. *Id.* at ¶¶2 and 9. For many years, Ms. Arminak jointly operated BBeautiful and Associates. *Id.* at ¶11. During that time, the companies shared offices and often used the same employees. *Id.* at ¶9.

---

to Withdraw the Reference; or, Alternatively (II) Defendants' Motion for an Extension of Time to File an Opposition to Debtor's Motion for Partial Summary Judgment and for a Continuance of the March 8, 2017 Hearing Date [Doc. No. 40]

b) Order Denying Defendants' Motion to Stay All Proceedings [Doc. No. 47]

c) Defendants Rieke-Arminak Corporation, Trimas Corporation, Rieke Corporation, and Arminak & Associates, LLC's Notice of Motion and Motion to Withdraw the Reference of Adversary Case No. 2:16-ap-01506-ER to the Bankruptcy Court Pursuant to 28 U.S.C. §157(d) [Doc. No. 49]

    i) Defendants Rieke-Arminak Corporation, Trimas Corporation, Rieke Corporation, and Arminak & Associates, LLC's Memorandum of Points and Authorities in Support of Their Motion to Withdraw the Reference of Adversary Case No. 2:16-ap-01506-ER to the Bankruptcy Court Pursuant to 28 U.S.C. §157(d) [Doc. No. 50]

d) Defendants Rieke-Arminak Corporation, Trimas Corporation, Rieke Corporation, and Arminak & Associates, LLC's Statement of Non-Consent to Bankruptcy Court's Authority to Enter a Final Judgment and Memorandum of Points and Authorities in Support of Their Position that this Adversary Proceeding is Non-Core [Doc. No. 52]

[2] All terms are defined in the Final Ruling.

Associates designs, manufactures, and supplies packaging solutions for the cosmetic, personal care, beauty aid, and household product markets. *Id.* at ¶10. Associates' customers have included corporations that manufacture and sell beauty, cosmetic, and personal care products, such as L'Oreal, Colgate, Bayer, and Johnson and Johnson. Declaration of Helga Arminak in Support of Motion by Debtor to Enforce the Automatic Stay and Assess Sanctions [Doc. No. 154, main bankruptcy case] ("First Arminak Decl.") at ¶3. Ms. Arminak's husband, Armin Arminak, and her brother, Roger Abadjian, were shareholders in Associates before it was sold (Ms. Arminak, Armin Arminak, and Roger Abadjian collectively, the "Arminaks"). *Id.* at ¶4.

BBeautiful develops personal beauty products, such as eye shadow, lip gloss, nail polish, and makeup powders. Second Arminak Decl. at ¶3. BBeautiful develops the formulas for these products and oversees their development, production (including packaging), and distribution to retail stores. *Id.* BBeautiful also sells its products directly to customers through the websites *www.chrislie.com* and *www.lashem.com*. *Id.* BBeautiful does not sell any packaging components to its customers. Plaintiff's Statement of Uncontroverted Facts ("SUF") [Doc. No. 34] at ¶7. Specifically, BBeautiful does not sell any dispensing systems, airless dispensing packages, jars, bottles, caps, closures, plastic tubes, or any other related containers as standalone products. *Id.* at ¶8.

## The Arminaks Sell Associates to Rieke

In 2012 and 2014, the Arminaks sold Associates to Rieke-Arminak Corporation in a two-phase purchase transaction for a purchase price of $110 million (70% of Associates was sold in 2012; the remaining 30% was sold in 2014). *Id.* at ¶12. Rieke-Arminak Corporation is a wholly-owned subsidiary of Rieke Corporation. Rieke is an entity within TriMas Corporation's packaging segment (Rieke-Arminak, Rieke Corporation, and Trimas collectively, "Rieke").

The 2012 Purchase Agreement prohibits the Arminaks from engaging in any "competing business," defined as "any business that designs, manufactures and/or sells dispensing systems, airless dispensing packages, jars, bottles, caps, closures, plastic tubes and other related containers for the cosmetic and beauty, personal care and household products industries" (the "Non-Compete Provision"). *See* 2012 Purchase Agreement at §§9.2(a) and 1.1 (attached to MSJ as Ex. 1). The Non-Compete Provision contains a carve-out, which provides that "nothing herein shall prohibit … (ii) the participation in and conduct of the business of BBeautiful (dba Chrislie Foundations) by Helga Arminak, except as it is limited by her Employment Agreement." *Id.* at §9.2(a). The Employment Agreement designates Ms. Arminak as the chief executive of Associates. It permits Ms. Arminak to devote an average of up to fifty hours per month to the management and operation of BBeautiful, provided that Ms. Arminak devotes an average of at least forty hours per week to the business of Associates. Employment Agreement at §2(d) (attached to MSJ as Ex. 3). The Non-Compete Provision remains in force until March 31, 2019. *See* 2012 Purchase Agreement §15; 2014 Purchase Agreement §4(a) (the 2012 Purchase Agreement, together with the 2014 Purchase Agreement, the "Purchase Agreements"). The 2012 Purchase Agreement also prohibits the Arminaks from soliciting or hiring any of Rieke's employees (the "Non-Solicitation Provision") (the Non-Compete Provision, together with the Non-Solicitation Provision, the "Restrictive Covenants").

## Litigation Ensues Between the Arminaks and Rieke

After Associates was acquired by Rieke, the Arminaks—Helga, her husband Armin, and her brother Roger—continued working at Associates/Rieke until February 2016. The parties dispute

the circumstances under which the Arminaks ceased working for Associates/Rieke; that dispute is not relevant to the present matter. Since leaving Associates/Rieke, the Arminaks or companies controlled by the Arminaks have initiated four actions against Rieke or Rieke's officers and/or employees. BBeautiful is not a party to any of these actions. On February 16, 2016, the Arminaks filed an action in the Los Angeles Superior Court seeking to invalidate the Restrictive Covenants. On April 19, 2016, the Arminaks filed an action in the Los Angeles Superior Court alleging that Associates and Mark Box, a Rieke employee, had made slanderous statements. Both actions were removed to the U.S. District Court for the Central District of California, and were subsequently consolidated (the "Consolidated Action"). On December 7, 2016, Judge Kronstadt granted Rieke's motion to transfer venue, and ordered that the claims relating to the Restrictive Covenants be severed and transferred to the Southern District of New York, on the grounds that the disputes concerning the Restrictive Covenants "should be adjudicated in New York under New York law." *See* Order Re: Defendants' Motion to Transfer Venue ("Dec. 7 Order") [Defendant's RJN, Ex. 8].

On April 4, 2016, two limited liability companies controlled by the Arminaks filed an action against Associates in the Los Angeles Superior Court. That action alleges that Associates damaged property that it had leased from the Arminaks' companies.

On April 14, 2016, the Arminaks filed an action in the New York Supreme Court[3] **[Note 1]** against Associates and Rieke (the "New York Action").[4] **[Note 2]** The New York Action seeks, *inter alia*, to invalidate the Non-Compete Provision. Associates and Rieke filed a counterclaim asserting breach of the Non-Compete Provision and seeking a temporary restraining order and preliminary injunction preventing the Arminaks from launching a competing business.

### Rieke Obtains a TRO in the New York Action

On November 10, 2016, the New York Court granted Associates and Rieke's motion for a temporary restraining order (the "New York TRO"), but modified the proposed TRO that was submitted by Rieke. The New York TRO provides in relevant part (language added by the court is in bold):

> Plaintiffs [the Arminaks], and all those acting in concert or cooperation with them, are hereby enjoined from directly or indirectly:
>
> **Except as it relates to BBeautiful and its specific carve-out, which she [Helga Arminak], a sophisticated businesswoman advised by counsel, signed**, competing with Rieke, directly or indirectly, from the present date until and including the date of trial in the above-captioned action, by, among other conduct:
>
> a. owning, operating, maintaining or engaging in any business, including but not limited to, *Arminak Solutions I, Inc.* and *Arminak Solutions LLC*, that designs, manufactures and/or sells dispensing systems, airless dispensing packages, jars, bottles, caps, closures, plastic tubes and other related containers for the cosmetic and beauty, personal care and/or household products industries; or
>
> b. participating in a bid solicitation process **to supply packaging** organized by Henkel Corporation; or

---

[3] In New York, the trial court is referred to as the Supreme Court.

[4] Helga and Armin Arminak, and corporations owned or controlled by the Arminaks, filed the New York Action. Although Roger Abadjian, Helga's brother, was previously a shareholder of Associates, he is not involved in the New York Action.

     c.   selling, or offering to sell, any dispensing systems, airless dispensing packages, jars, bottles, caps, closures, plastic tubes and other related containers to any current or former Rieke customers, including but not limited to, Clorox or Colgate; or

     d.   maintaining, operating or causing the web site www.arminaksolutions.com to be maintained or operated.

New York TRO (Defendant's RJN, Ex. 11).

A hearing on whether the New York TRO should be converted to a preliminary injunction is scheduled to take place on March 10, 2017. The Arminaks state that they offered to stipulate that the New York TRO be converted to a preliminary injunction, provided that the injunction retain the exclusion for BBeautiful's activity. According to the Arminaks, Rieke refused to enter into such a stipulation, and seeks to have a preliminary injunction entered omitting the exclusion for BBeautiful.

## This Court Denies BBeautiful's Motion to Enforce the Automatic Stay

On January 13, 2017, this Court entered an order denying BBeautiful's motion seeking to enforce the automatic stay against Rieke (the "Enforcement Motion"). *See* Order Denying Motion by Debtor to Enforce the Automatic Stay and to Assess Sanctions [Doc. No. 193, main bankruptcy case] and Final Ruling Denying Enforcement Motion [Doc. No. 184, main bankruptcy case]. In the Enforcement Motion, BBeautiful contended that a letter that Rieke had sent to its customers on November 22, 2016 (the "November 22 Letter") regarding the New York TRO violated the automatic stay. The November 22 Letter provides:

On Friday, November 11, 2016,[5] **[Note 3]** Justice Kornreich of the Supreme Court of the State of New York issued a temporary restraining order prohibiting Helga Arminak, Armin Arminak, and affiliated businesses and individuals, from competing, directly or indirectly, with Rieke Corporation or Arminak & Associates LLC. These individuals are currently prohibited from, among other things, selling or providing any dispensing systems, airless dispensing packages, jars, bottles, caps, closures, plastic tubes and other related containers for the cosmetic and beauty, personal care and household products industries. They may not advertise such products, solicit such business, and/or participate in any related requests for proposal, or other bidding procedures.

Justice Kornreich's Order is effective immediately, and will remain effective until at least February 2, 2017. On that date, Justice Kornreich will hold a hearing to determine whether to further extend the Order.

If you would like a copy of the Order please contact the General Counsel of TriMas Corporation.

November 22 Letter (Ex. C, Doc. No. 162, main bankruptcy case).

According to BBeautiful, the November 22 Letter constituted an effort to obtain possession of or exercise control over property of the estate, because it interfered with BBeautiful's potential customer relationships. BBeautiful asserted that by failing to explain that the New York TRO contained an exclusion for BBeautiful's activities, the letter discouraged BBeautiful's potential customers from doing business with it.

The Court found that the November 22 Letter did not violate the automatic stay, reasoning that BBeautiful's potential customer relationships did not constitute property of the estate:

---

[5] The New York TRO was issued on November 10, 2016, not on November 11, 2016.

Section 541 defines "property of the estate" as "all legal or equitable interests of the debtor in property *as of the commencement of the case*" (emphasis added). Accordingly, Rieke's alleged interference with these potential relationships did not violate §362(a)(3)'s stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

BBeautiful commenced this voluntary Chapter 11 petition on January 22, 2016. On behalf of BBeautiful, Helga attempted to establish relationships with new customers and new suppliers in October, November, and December of 2016. These business relationships did not exist "as of the commencement of the case," and therefore cannot constitute property of the estate within the meaning of §541(a)(1). Section 541(a)(7) provides that "[a]ny interest in property that the estate acquires after the commencement of the case" also constitutes property of the estate. BBeautiful attempted to establish business relationships with potential customers and potential suppliers in late 2016, but was unsuccessful in doing so, in part as a result of Rieke's communications to those potential customers. Since these prospective business relationship were never actually established, they cannot constitute an "interest in property" under §541(a)(7).

None of the cases cited by BBeautiful are to the contrary. All those cases involved existing, not prospective, business relationships. For example, in *In re Trump Entm't Resorts, Inc.*, 534 B.R. 93, 102–03 (Bankr. D. Del. 2015), the debtor, the Taj Mahal resort, had contracts with organizations under which the debtor agreed to host conventions on behalf of those organizations. The *Trump* court held that the debtor's contracts to host these future conventions as constituted property of the estate. Although the *Trump* court described the organizations as "potential" customers, that was only because the conventions had not yet taken place. That is, in contrast to the present case, the debtor in *Trump* had existing business relationships with various organizations. Here, BBeautiful did not have an existing business relationship with any of the potential customers or suppliers; it was seeking to form entirely new business relationships.

Similarly, in *In re Family Health Servs., Inc.*, 105 B.R. 937, 943 (Bankr. C.D. Cal. 1989), the court found that the debtor's existing business relationships with health care subscribers constituted property of the estate; *In re HMH Motor Servs., Inc.*, 259 B.R. 440, 451 (Bankr. S.D. Ga. 2000) likewise pertained to existing, not prospective, business relationships. *In re All Trac Transp., Inc.*, 306 B.R. 859 (Bankr. N.D. Tex. 2004) also involved interference with existing customer relationships. In *In re MCEG Prods., Inc.*, 133 B.R. 232, 234 (Bankr. C.D. Cal. 1991), the court held that a post-petition compromise and sale agreement was property of the estate. *MCEG Products* does not support the contention that a prospective business relationship constitutes estate property.
Final Ruling Denying Enforcement Motion at 9–10.

## **BBeautiful Commences an Action Against Rieke in the Bankruptcy Case**

On November 16, 2016, BBeautiful commenced an action against Rieke in the bankruptcy case. On December 29, 2016, BBeautiful filed a First Amended Complaint, which is the operative complaint ("Complaint"). The Complaint alleges that despite the Non-Compete Provision's specific carve-out for BBeautiful, Rieke and its employees "have falsely stated to BBeautiful's potential customers and suppliers that they may not do business with BBeautiful. Such statements have prevented new customers from transacting with BBeautiful and prevented

Helga Arminak from utilizing her long-standing industry contracts to develop and sell existing and new products for Plaintiff [BBeautiful]." Complaint at ¶17.

The Complaint asserts claims for declaratory relief, tortious interference with prospective economic advantage, and violation of California Business and Professions Code §17200. In the first claim, for declaratory relief, BBeautiful seeks a declaration that the Non-Compete Provision (1) does not bar BBeautiful from conducting its historic business of selling finished beauty products and (2) does not bar BBeautiful from conducting a contemplated new business selling packaging products. Complaint at ¶¶21–23. In the second claim, for tortious interference with prospective economic advantage, BBeautiful alleges that Rieke and its employees "intentionally contacted BBeautiful's customers and told them not to do business with BBeautiful because they falsely claim BBeautiful is not allowed to compete with Rieke under the terms of the Purchase Agreement." *Id.* at ¶26. BBeautiful seeks damages of not less than $40 million on the second claim. In the third claim, for violation of California Business and Professions Code §17200 (the Unfair Competition Law or "UCL"), BBeautiful alleges that the Non-Compete Provision is void pursuant to California Business and Professions Code §16600, and that accordingly Rieke's assertion of the Non-Compete Provision is an unlawful business practice barred by the UCL. BBeautiful seeks damages of not less than $40 million on the third claim.

On January 6, 2017, Rieke moved to extend its time to respond to the Complaint from January 18, 2017 to February 17, 2017. Doc. No. 23. On January 10, 2017, the Court granted the motion in part, and extended Rieke's time to file a responsive pleading from January 18, 2017 to February 1, 2017. Doc. No. 24. On February 1, 2017, Rieke filed in the District Court a motion to withdraw the reference with respect to the adversary proceeding. The District Court has scheduled a hearing on Rieke's motion to withdraw the reference for April 17, 2017. On February 1, 2017, Rieke filed in the Bankruptcy Court a motion to stay all proceedings in the action until the District Court decided Rieke's motion to withdraw the reference. In the alternative, Rieke sought an extension of time to oppose BBeautiful's pending motion for partial summary judgment. On February 2, 2017, the Court denied Rieke's motion to stay the adversary proceeding. The Court explained:

> The standard for issuance of a stay pending the District Court's ruling upon a motion for withdrawal of the reference "is the same as on any motion for stay." *In re Matterhorn Grp., Inc.*, No. 2:10-CV-02849-GEB, 2010 WL 4628119, at *2 (E.D. Cal. Nov. 5, 2010). That standard requires the Court to consider the following four factors:
>
> > (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.
>
> *Nken v. Holder*, 556 U.S. 418, 426 (2009).
>
> Defendants have failed to establish that they are entitled to a stay. First, Defendants have not shown that there is a strong likelihood that the District Court will grant their motion to withdraw the reference. Withdrawal of the reference is mandatory if "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. §157(d). In other cases, withdrawal of the reference is discretionary. Here, Defendants seek discretionary withdrawal. Because the "standard for permissive withdrawal is high and must be satisfied by the party seeking withdrawal," *In re: KSL Media, Inc.*, No. AP 15-01212-GM, 2016 WL 74385, at *2 (C.D. Cal. Jan. 6, 2016),

Defendants face a particularly difficult task in showing a strong likelihood of success on their motion for permissive withdrawal. In considering a motion for permissive withdrawal, the District Court considers factors such as "the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997). While Defendants present compelling arguments with respect to many of these factors, given the discretionary nature of permissive withdrawal and Defendants' high burden, the Court cannot find that Defendants have shown a strong likelihood that the District Court will grant their motion to withdraw the reference.

Second, Defendants have failed to show that, absent a stay, they will suffer irreparable injury, or even that the balance of the hardships tips sharply in their favor. Defendants' inability to show hardship is particularly damaging to their motion for a stay. Being required to litigate in the Bankruptcy Court, as opposed to the District Court, does not deprive Defendants of any substantive legal rights. If Defendants prevail upon their motion to withdraw the reference, litigation will continue in the District Court. There is nothing prejudicial about being required to litigate first in the Bankruptcy Court and then in the District Court. In fact, in situations where the right to a jury trial exists, the Ninth Circuit has found that it is entirely appropriate for both the Bankruptcy Court and the District Court to preside over the litigation ....

Third, a stay of the proceedings will harm the Plaintiffs. The declaratory relief sought by the Plaintiffs in connection with their March 8 motion for partial summary adjudication would, if granted, make it easier for Plaintiffs to conduct their business, in turn increasing Plaintiff's likelihood of successfully confirming a plan of reorganization. Further delay in the adjudication of that relief would make confirming a plan more difficult.

Finally, the public interest in the expeditious resolution of bankruptcy cases weighs against staying the proceedings.

Order Denying Defendants' Motion to Stay All Proceedings [Doc. No. 47] at 2–4.

In addition, the Court found that Rieke's motion to stay the adversary proceeding did not constitute a response to the Complaint. The Court ordered Rieke to respond to the Complaint by February 8, 2017. *Id.* at 4. The Court declined to extend Rieke's time to oppose BBeautiful's motion for partial summary judgment, and declined to continue the March 8 hearing on the motion for summary judgment. On February 8, Rieke filed a motion to dismiss the Complaint. A hearing on BBeautiful's motion for partial summary adjudication is scheduled to take place concurrently with the hearing on Rieke's motion to dismiss.

## II. Summary of Rieke's Motion to Dismiss and BBeautiful's Motion for Summary Judgment

### Summary of Rieke's Motion to Dismiss, BBeautiful's Opposition, and Rieke's Reply

Rieke asserts that the first claim for declaratory relief should be dismissed for the following reasons:

1) BBeautiful lacks standing to seek declaratory relief with respect to the scope of the Restrictive Covenants, because BBeautiful is not a party to the contract containing the Restrictive Covenants. *See McClain v. First Mortg. Corp.*, No. SACV 15-2-JLS (JCGX),

2015 WL 11199074, at *2 (C.D. Cal. Mar. 16, 2015) ("It is well established [] that a person who is not a party to a contract does not have standing either to seek its enforcement or to bring tort claims based on the contractual relationship.")

2) The first claim is not ripe for adjudication. Rieke and BBeautiful agree that (1) BBeautiful is not a signatory to the Purchase Agreements; (2) BBeautiful is not bound by the Purchase Agreements or any provisions therein, including the Restrictive Covenants; (3) BBeautiful is not subject to the New York TRO; (4) BBeautiful is allowed to operate its beauty and cosmetic products business; and (5) Ms. Arminak, BBeautiful's principal, is subject to the Restrictive Covenants and the New York TRO and is not permitted to operate any competing business. Therefore, the first claim is not ripe because BBeautiful seeks a judgment that BBeautiful is not subject to the Restrictive Covenants, a fact which the parties do not dispute. Dismissal of a claim for declaratory judgment is appropriate where a court determines that there is no "actual case or controversy within its jurisdiction." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005).

3) The parties dispute whether BBeautiful is prohibited from selling stand-alone packaging products. However, this dispute is not ripe for adjudication, because BBeautiful concedes that, to date, it has not attempted to sell stand-alone packaging products. Instead, BBeautiful states that it *may seek* to offer stand-alone packaging products as part of its plan of reorganization.

4) Even if the Court determines that BBeautiful has sufficiently pleaded an actual case or controversy, it should dismiss the claim for declaratory relief because it is duplicative of the relief sought in the New York Action. "[A] district court has discretion to dismiss a federal declaratory judgment action when 'the questions in controversy ... can better be settled' in a pending state court proceeding." *R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011). The claim for declaratory relief does not involve federal issues; it concerns the scope and enforceability of the Restrictive Covenants, which are governed by New York law. The scope of the Restrictive Covenants will be determined in the New York Action. "[W]hen a party requests declaratory relief in federal court and a suit is pending in state court presenting the same state law issues, there exists a presumption that the entire suit should be heard in state court." *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1366–67 (9th Cir. 1991).

5) This adversary proceeding is an attempt by Ms. Arminak to avoid adverse rulings in the New York Action and the Consolidated Action. This action was commenced shortly after issuance of the New York TRO. The Complaint was amended to add a cause of action challenging the Restrictive Covenants under a California statute shortly after Judge Kronstadt's December 7 Order, which transferred the claims in the Consolidated Action that related to the Restrictive Covenants to the District Court for the Southern District of New York. Ms. Arminak's forum shopping weighs heavily in favor of dismissal. *See In re GTS 900 F, LLC*, No. 2:09-BK-35127-VZ, 2010 WL 4878839, at *5 (C.D. Cal. Nov. 23, 2010) ("Forum shopping is likely where a party moves . . . after adverse findings have been made against it . . . ."); *In re: KSL Media, Inc.*, No. AP 15-01212-GM, 2016 WL 74385, *9 (C.D. Cal. Jan. 6, 2016) ("'Forum shopping' occurs when a party attempts to manipulate an action to have it heard before a forum it deems more favorable, charitable, or sympathetic toward its point of view.")

6) If the Court does not dismiss the Complaint, the Court should permissively abstain from hearing the Complaint pursuant to 28 U.S.C. §1334(c)(1). Permissive abstention is appropriate because:

a) This lawsuit is merely forum shopping by a dissatisfied litigant;

b) The Complaint asserts only non-core, state law claims;

c) Rieke has a right to a jury trial;

d) Rieke does not consent to a jury trial before the Bankruptcy Court and, as a result, the Bankruptcy Court may not preside over a jury trial;

e) The courts in both the New York Action and the Consolidated Action have already interpreted the Restrictive Covenants, and have issued rulings enforcing their terms;

f) Abstention will have little impact on the administration of the estate because the action asserts only non-core claims that the District Court will be required to review *de novo*;

g) The Court has already determined that the conducted alleged in the Complaint does not affect property of the estate;

h) Abstention will promote comity with the Supreme Court of the New York, where the Arminaks have been litigating the same issues since April 4, 2016.

Rieke asserts that the second claim for tortious interference with prospective economic advantage should be dismissed for the following reasons:

1) The elements of a claim for tortious interference with economic advantage are as follows: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (2003). BBeautiful has not sufficiently pleaded the existence of any "economic relationship … with the probability of future economic benefit." Instead, BBeautiful concedes that the alleged interference was with "prospective customers," Complaint at ¶27. A claim for tortious interference is insufficient where it alleges only "'hypothetical relationships' not developed at the time of the allegedly tortious acts." *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F.Supp. 1303, 1311 (N.D.Cal. 1997); *Bio-Med. Research Ltd.*, 249 F. App'x at 542 (affirming dismissal where the plaintiff failed to identify "an existing relationship with an identifiable buyer"); *Dooley v. Crab Boat Owners Ass'n*, 271 F.Supp. 2d 1207, 1216–17 (N.D. Cal. 2003) ("The economic relationship must be either in the form of a contract or an existing relationship with an identifiable third party."); *Universal Grading Serv. v. eBay, Inc.*, 2011 WL 846060, at *11 (N.D. Cal. Mar. 8, 2011) ("Without any identifiable prospective buyers, plaintiff's expectation of future business is 'at most a hope for an economic relationship and a desire for future benefit.'"); *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, 2005 WL 832398, *9 (N.D. Cal. Mar. 30, 2005) (finding allegations of "future and prospective sales" to "repeat customers . . . too speculative to support" a claim for tortious interference).

2) BBeautiful has not alleged any "actual disruption," instead offering only the conclusory allegation that "customers no longer want to do business" with it. This allegation is insufficient. *See Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d

1024, 1032 (N.D. Cal. 2011) ("The Ninth Circuit found insufficient the 'conclusory' allegations that the plaintiff 'has been harmed because its ongoing business and economic relationships with Customers have been disrupted. [To sufficiently state a claim for tortious interference] [t]he plaintiff [must] allege, for example, that it lost a contract … or that a negotiation with a Customer failed.'").

3) BBeautiful has not sufficiently alleged that Rieke had knowledge of the relationships with which it purportedly interfered. Rieke cannot reasonably be expected to have knowledge of the hypothetical relationships identified in the Complaint.

4) BBeautiful "must plead and prove as part of its case-in-chief that the defendant's conduct was 'wrongful by some legal measure other than the fact of interference itself.'" *Korea Supply*, 63 P.3d at 954. BBeautiful has failed to allege that Rieke's conduct was independently unlawful. In addition, the Court has already determined that communications with prospective customers do not constitute an act to obtain possession of property of the estate.

Rieke asserts that the third claim for violation of the UCL should be dismissed for the following reasons:

1) The UCL prohibits any "unlawful, unfair, or fraudulent business act or practice." California Business and Professions Code §17200. BBeautiful fails to state a claim under the UCL, because the Restrictive Covenants, which are governed by New York law, are routinely upheld by New York courts.

2) To maintain a claim under the UCL, BBeautiful must show that it has "suffered injury in fact and has lost money or property as a result of unfair competition." California Business and Professions Code §17204. To make this showing, BBeautiful "must have either prior possession or a vested legal interest in the money or property lost." *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1172 (E.D. Cal. 2007), *aff'd sub nom. Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025 (9th Cir. 2009). BBeautiful cannot make this showing, given that it admits that it is not currently selling packaging products and does not have concrete plans to do so in the future.

Rieke argues that the action is not a core proceeding for the following reasons:

1) The Complaint does not invoke any substantive right created by federal bankruptcy law. All three claims for relief have been expressly found to be non-core:

   a) The first claim for declaratory relief is non-core per *In re Temecula Valley Bancorp, Inc.*, 523 B.R. 210, 222-3 (C.D. Cal. 2014) (finding that claim for declaratory relief arising out of a pre-petition contract governed by state law is a non-core claim);

   b) The second claim for tortious interference with prospective economic advantage is non-core per *Stern v. Marshall*, 564 U.S. 462, 495 (2011) (finding that a "tortious interference [claim is] one at common law that simply attempts to augment the bankruptcy estate—the very type of claim that . . . must be decided by an Article III court."); and

   c) The third claim for violation of California Business and Professions Code §17200 is non-core per *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 84 (1982) (finding that a bankruptcy court has no constitutional authority to hear a contract claim arising under state law).

2) The fact that the Complaint seeks to recover funds to augment the estate cannot turn its non-core claims into core-claims. *See In re Cinematronics, Inc.*, 916 F.2d 1444, 1450 (9th Cir. 1990) (finding that "state law claims that relate to a bankruptcy proceeding but that exist against a nondebtor" are non-core); *In re Harris Pine Mills*, 44 F.3d 1431, 1435 (9th Cir. 1995) ("If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but . . . it is an 'otherwise related' or non-core proceeding.").

BBeautiful makes the following arguments in opposition to Rieke's motion to dismiss its first claim for declaratory relief:

1) BBeautiful has standing to seek declaratory relief notwithstanding the fact that it is not a party to the Purchase Agreements. Rieke cites cases providing that a non-party lacks standing to enforce a contract. Those cases are inapposite, because BBeautiful is not seeking to enforce the Purchase Agreements; it is seeking a declaration that the Non-Compete Provision of the Purchase Agreements does not bar it from selling (1) beauty products and (2) stand-alone packaging components for beauty products.

2) In its motion to dismiss, Rieke states that BBeautiful "cannot sell stand-alone packaging products" as long as it is operated, managed, or controlled by Ms. Arminak or her family members. MTD at 19. [6] **[Note 4]** Rieke's statement amounts to a threat to sue BBeautiful. "[T]he threat of suit is enough to create standing, such that the threatened party may seek a declaration that the threatening party's putative rights are invalid." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1056 (9th Cir. 2008).

3) The action is ripe for adjudication. Although Rieke states to this Court that it does not dispute that BBeautiful is permitted to operate its beauty and cosmetic products business, Rieke's public conduct belies this assertion. As alleged in the Complaint, Rieke has prevented BBeautiful from selling existing and new products by relying upon an unreasonably broad interpretation of the Restrictive Covenants. Complaint at ¶19. In addition, Rieke sought a TRO in the New York Action that failed to include any exclusion for BBeautiful.

BBeautiful makes the following arguments in opposition to Rieke's motion to dismiss its second claim for tortious interference with prospective economic advantage:

1) BBeautiful has sufficiently alleged that Rieke has disrupted specific economic relationships—namely relationships with Henkel, Colgate-Palmolive, Avon, Coty, and L Brands. Complaint at ¶27. *See Westside Ctr. Assocs. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 522, 49 Cal. Rptr. 2d 793, 803 (1996) (holding that "a purely hypothetical relationship" does not provide sufficient probability of future economic benefit to the plaintiff to state a claim for tortious interference with prospective economic advantage).

2) BBeautiful has alleged a violation of California Business and Professions Code §17200, which satisfies the requirement that BBeautiful allege an independently wrongful act. *See Hilderman v. Enea TekSci, Inc.*, 551 F. Supp. 2d 1183, 1197 (S.D. Cal. 2008) ("A

---

[6] All citations refer to the page numbers that are automatically affixed to the top of each page by the Electronic Case Filing (ECF) system upon filing, rather than to the pagination used by the document's preparer.

violation of section 17200 can satisfy the requirement of an independently wrongful act.").

BBeautiful makes the following arguments in opposition to Rieke's motion to dismiss its third claim for violation of the UCL:

1) Under California law, a covenant not to compete is void and unenforceable. Thus, the Restrictive Covenants are non-existent in California. By asserting the non-existence Restrictive Covenants against BBeautiful, Rieke is engaging in an unlawful business practice. *See Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1124 (9th Cir. 2009) (holding that "asserting a contractual right one does not have may constitute an unfair business practice").

BBeautiful submits a declaration from Ms. Arminak in support of its opposition (the "Arminak Decl."). In the declaration, Ms. Arminak states that Rieke has discouraged customers from doing business with BBeautiful:

1) "I entered into discussions with Henkel about what products they may be able to purchase from my business. Henkel has an extensive beauty care line and was a potential BBeautiful customer. In connection with these discussions, I signed a non-disclosure agreement with Henkel, and discussions were successfully progressing in the fall of 2016. However, I learned from a Henkel employee that on or about November 2, 2016, TriMas' General Counsel [Rieke's parent], Joshua Sherbin, made a call and sent a letter to the corporate offices of Henkel and instructed them not to do business with BBeautiful or have any dealings with me. Since these communications, Henkel has refused to have any further dealings with BBeautiful." Arminak Decl. [Doc. No. 63-1] at ¶5.

2) "I also reached out to my contact [at] Avon to gauge his interest in, among other things, developing a face mask. [Associates] did not sell face masks, and did not sell any packaging to Avon while I worked there. I sent my contact at Avon a copy of the signed TRO so that he could see for himself that BBeautiful was not covered by the injunction, but he expressed confusion about who had added the handwritten note. Avon has since stated it will not continue discussions with me or BBeautiful." *Id.* at ¶6.

3) "I had the same experience at Coty, another major cosmetic company and potential customer for BBeautiful, which was also not a customer of [Associates] when I worked there. A representative from Coty has also told me that Coty will not have any further dealings with BBeautiful or me." *Id.* at ¶7.

4) "In … discussions regarding the [New York TRO], Defendants' [Rieke's] highest executives discussed telling 'all main customers' about the TRO in order to 'stop [her] in her tracks'" and to "'stop the customers investing time in specifying her products.'" *Id.* at ¶14.

Rieke makes the following arguments in reply to BBeautiful's opposition to dismissal of its first claim for declaratory relief:

1) Rieke has threatened suit against Ms. Arminak but has not threatened suit against BBeautiful. Because there is no threat of litigation against BBeautiful and BBeautiful is not a party to the Purchase Agreements, it lacks standing to challenge the Restrictive Covenants.

2) BBeautiful "argues that the first claim for declaratory relief is ripe for adjudication because it seeks a declaration of [BBeautiful's] 'distinct' rights under the Restrictive Covenants. This argument is directly at odds with [BBeautiful's] standing argument that it does not seek an adjudication of the force and effect of the Restrictive Covenants. (Opp., 9:7) These positions are mutually exclusive: [BBeautiful] either concedes that it wants this Court to interpret and enforce the Restrictive Covenants to its benefit, in which case the [BBeautiful] lacks standing, or [BBeautiful] concedes that it does not want such an adjudication, in which case, the [BBeautiful] has not alleged a case or case or controversy." Reply to MTD at 10.

Rieke objects to the consideration of the Arminak Declaration in the context of a motion to dismiss and moves to strike the Arminak Declaration in its entirety. In the event the Court does consider the Arminak Declaration, Rieke asserts that the statements therein are inadmissible as irrelevant, misleading, and hearsay.

Rieke does not raise any new arguments in its reply to BBeautiful's opposition to dismissal of the second and third claims for relief.

## Summary of BBeautiful's Motion for Summary Judgment, Rieke's Opposition, and BBeautiful's Reply

BBeautiful seeks partial summary judgment on its claim for a declaration that it is entitled to sell finished beauty products. BBeautiful does not seek summary judgment on its claim for a declaration that it is entitled to sell stand-alone packaging products. BBeautiful seeks a declaration that it is entitled to sell all the beauty products reflected on a list attached to Ms. Arminak's declaration (the "Permitted Beauty Products"). The 418 Permitted Beauty Products include without limitation eyeshadows, blushes, contours, lip balms, lip glosses, makeup tools, skin cleansers, lotions, fragrances, bath and body products, manicure and pedicure products, essential oils, and nail polishes. BBeautiful also seeks a declaration that it is entitled to purchase packaging components to use in the production of the Permitted Beauty Products. BBeautiful asserts that the plain language of the Non-Compete Provision entitles it to sell the Permitted Beauty Products.

In opposition, Rieke states that it has never taken the position that BBeautiful is not permitted to sell finished beauty products. Rieke argues that there is no actual case or controversy for the Court to resolve, and that BBeautiful accordingly lacks standing to seek declaratory relief. Rieke submits the declaration of Mark Box, the vice president and manager of Associates. The Box declaration provides in relevant part: "Defendants have not sued and have no plans to sue BBeautiful based on conduct consisting of selling the finished beauty products listed in the Appendix to the Arminak Declaration, purchasing packaging components for use in the finished products listed in the Appendix, or applying to become a qualified vendor of the finished beauty products listed in the Appendix." Box Decl. at ¶4.

In reply, BBeautiful argues that it has standing to seek declaratory relief. BBeautiful argues that the threat of suit is sufficient to create standing, and maintains that the Box Declaration has not eliminated that threat, since the Box Declaration states only that "Defendants … have no plans to sue BBeautiful." BBeautiful further argues that Rieke's public behavior is inconsistent with its claim that it does not dispute BBeautiful's right to sell finished beauty products, for the following reasons:

1) Rieke sought a TRO in the New York Action which did not contain a carve-out for BBeautiful's business. The New York Court inserted a handwritten exclusion, clarifying that the injunction would not apply to BBeautiful, at the urging of Ms. Arminak's counsel.

2) Since the motion for summary judgment was filed, Rieke has taken a position in the New York Action that contradicts Rieke's position presented to the Bankruptcy Court. In the New York Action, the Arminaks proposed stipulating to converting the New York TRO to a preliminary injunction, provided that the injunction retain the exclusion for BBeautiful. Rieke refused to enter into the stipulation, and seeks to have a preliminary injunction entered omitting the exclusion for BBeautiful. Rieke's position in the New York Action creates an actual controversy sufficient to confer standing upon BBeautiful to pursue its claims.

## III. Findings and Conclusions

### This Action is Non-Core

This action is not a core proceeding. None of the claims for relief invoke substantive rights created by federal bankruptcy law. "Actions that do not depend on bankruptcy laws for their existence and that could proceed in another court are considered 'non-core.'" *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997). The claims for declaratory relief, tortious interference with prospective economic advantage, and violation of California Business and Professions Code §17200 could all be brought in state court. The fact that the Complaint seeks to augment the estate cannot transform it into a core proceeding. *See Stern v. Marshall*, 564 U.S. 462, 495 (2011) (finding that a tortious interference claim "that simply attempts to augment the bankruptcy estate" was non-core). Pursuant to 28 U.S.C. §157(c)(1) and Bankruptcy Rule 9033, the Court's findings and conclusions will be transmitted to the District Court as a Report and Recommendation.

### *Rieke's Motion to Dismiss BBeautiful's First Claim for Relief is Granted in Part and Denied in Part*

At the outset, the Court declines to consider the Arminak Declaration in determining Rieke's motion to dismiss. Consideration of extrinsic evidence is not appropriate in the adjudication of a motion to dismiss. *See Lee v. Los Angeles*, 250 F.3d 688, 690 (9th Cir. 2001).

### The Court Declines to Abstain from Hearing this Action

Title 28 U.S.C. § 1334(c)(1) provides in relevant part: "[N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." In *Christensen v. Tucscon Estates, Inc. (In re Tucscon Estates)*, the Ninth Circuit set forth the factors the Court should consider in determining whether to permissively abstain:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention,
> (2) the extent to which state law issues predominate over bankruptcy issues,
> (3) the difficulty or unsettled nature of the applicable law,

(4) the presence of a related proceeding commenced in state court or other nonbankruptcy court,

(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334,

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case,

(7) the substance rather than form of an asserted "core" proceeding,

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court,

(9) the burden of [the bankruptcy court's] docket,

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties,

(11) the existence of a right to a jury trial, and

(12) the presence in the proceeding of nondebtor parties.

912 F.2d 1162, 1167 (9th Cir. 1990).

Not all the factors are relevant in every case, and the Court is not required to give equal weight to each factor. *Truebro, Inc. v. Plumberex Specialty Products, Inc. (In re Plumberex Specialty Products, Inc.)*, 311 B.R. 551, 560 (Bankr. C.D. Cal. 2004).

Abstention is not appropriate here. Although the Complaint primarily involves state law issues, the declaratory relief that BBeautiful seeks will assist BBeautiful in consummating a plan of reorganization. Therefore, the efficient administration of the estate weighs against abstention. The New York Action is related to this action in the sense that it involves the same contracts, but differs in a key respect since BBeautiful is not a party. The fact that BBeautiful can obtain a declaration as to its rights only in this Court counsels against abstention (factor four). Contrary to Rieke's contentions, the Court does not view this action as forum-shopping by BBeautiful. As noted, the action differs in a fundamental respect from the New York Action (and from the other proceedings the Arminaks have commenced in the District Court) in that BBeautiful is a party.

## **BBeautiful Has Standing to Seek A Declaration that it is Entitled to Sell Finished Beauty Products**

Title 28 U.S.C. §2201(a) provides in relevant part: "In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

Here, BBeautiful has standing to seek declaratory relief because an actual controversy exists between BBeautiful and Rieke with respect to BBeautiful's rights to sell finished beauty products. "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147.

The Complaint sufficiently alleges a "concrete [and] particularized" injury: that Rieke and its employees have "falsely stated to BBeautiful's potential customers and suppliers that they may not do business with BBeautiful," and that these statements "have prevented new customers from transacting with BBeautiful and prevented Helga Arminak from utilizing her long-standing industry contacts to develop and sell existing and new products" on BBeautiful's behalf. Complaint at ¶19. The alleged injury is actual—new customers are refusing to buy BBeautiful's existing products. The alleged injury is traceable to Rieke's alleged conduct, and can be

redressed by a ruling declaring the scope of the Non-Compete Provision and the other Restrictive Covenants.

The fact that BBeautiful is not a party to the Purchase Agreements, which contain the Restrictive Covenants, does not defeat BBeautiful's standing. Ms. Arminak is BBeautiful's principal and managing member, Complaint at ¶3, and plays a key role in its operations, being responsible for (1) overseeing the design and manufacture of BBeautiful's products, (2) selling BBeautiful's products using her industry contacts, and (3) developing new products, Complaint at ¶¶ 16, 19. Ms. Arminak is a party to the Purchase Agreements. Rieke takes the position that so long as Ms. Arminak is involved in BBeautiful's operations, BBeautiful is constrained by the Restrictive Covenants. *See* MTD at 19 ("[S]o long as Ms. Arminak … operates, controls or manages [BBeautiful], it cannot sell stand-alone packaging products."). As a result of Ms. Arminak's involvement, BBeautiful is affected by the Restrictive Covenants, and therefore has standing to seek declaratory relief as to their scope.

The cases cited by Rieke, holding that a non-party to a contract lacks standing to enforce a contract, are inapposite. BBeautiful is not seeking to enforce the Purchase Agreements; it is seeking a declaration that the Restrictive Covenants do not restrict it from conducting certain types of business.

Rieke asserts that BBeautiful lacks standing because Rieke has threatened suit against Ms. Arminak but has not threatened suit against BBeautiful. The Court disagrees with Rieke's position. There is extensive litigation between Rieke and Ms. Arminak. As described above, Ms. Arminak is essential to BBeautiful's operations; without Ms. Arminak, it would  be much more difficult for BBeautiful to design, manufacture, and sell its products. Therefore, if BBeautiful were to obtain a judgment prohibiting Ms. Arminak from selling or developing certain products, such a judgment would effectively prevent BBeautiful from selling or developing those products. Consequently, BBeautiful is faced with a reasonable apprehension that its ability to develop and sell products (with the assistance of its founder, principal, and manager member Ms. Arminak) could be jeopardized as a result of litigation against Ms. Arminak. Since litigation against Ms. Arminak is, in terms of its practical effects, tantamount to litigation against BBeautiful, BBeautiful has standing to seek declaratory relief. *See Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1056 (9th Cir. 2008) ("[T]he threat of suit is enough to create standing, such that the threatened party may seek a declaration that the threatening party's putative rights are invalid."); *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co .. Inc.*, 655 F.2d 938, 944 (9th Cir. 1981) (holding that an "actual threat of litigation" is not required to establish standing; instead, a plaintiff must only meet the "much lower threshhold" of having "a real and reasonable apprehension" of litigation).

**BBeautiful's Claim for a Declaration that it is Entitled to Sell Stand-Alone Packaging is Not Ripe for Adjudication**

Rieke argues that the action is not ripe for adjudication, based on the fact that BBeautiful alleges only that it may seek to sell stand-alone packaging products in the future. According to Rieke, these plans are too hypothetical and conjectural to create an actual case or controversy that is ripe for adjudication.

As the Ninth Circuit has explained, the concepts of standing and ripeness are closely related:

> To have standing, a plaintiff must have suffered an injury in fact that is "concrete and particularized"; that can be fairly traced to the defendant's action; and that can be redressed by a favorable decision of the court. "While standing is primarily concerned

with *who* is a proper party to litigate a particular matter, ripeness addresses *when* litigation may occur." "[I]n many cases, ripeness coincides squarely with standing's injury in fact prong." The ripeness inquiry in some cases may therefore "be characterized as standing on a timeline."

     For example, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." That is so because, if the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing. In this way, ripeness and standing are intertwined.

*Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009) (internal citations omitted).

     In *Bova*, employees sued the City of Medford, alleging that they were injured by Medford's policy of discontinuing health insurance coverage to city employees after they retired. *Id.* at 1094. The plaintiffs were current employees of Medford who had not yet retired and thus had not been denied any benefits. *Id.* The Ninth Circuit dismissed the action as unripe, reasoning that the injury was contingent and had not yet occurred:

     [Plaintiff's injury] is contingent upon two events: (1) each Plaintiff's retirement from City service; and (2) the City's official denial of benefits to him or her. It is possible that neither of the two events will occur. Plaintiffs could change jobs, be terminated, or die (though we hope not) before retiring….

     Plaintiffs argue that, because the City's current policy would deny them health insurance coverage after they retire, they *may* delay their retirement, *may* leave the City of Medford to join another public employer that provides post-retirement insurance, or *may* make medical decisions differently than they would if they were guaranteed coverage after retiring. The contingencies that they describe are not sufficiently tangible or definite to meet the "concrete and particularized" injury requirement of *Lujan*.

*Id.* at 1097.

     Here, BBeautiful alleges that it "*may* be approached by customers seeking to purchase the packaging designed by BBeautiful for its products," that it "*may* seek to develop and offer for sale packaging that is not of the type and qualify offered" by Rieke, and that it "*may* also seek to offer such packaging, or other packaging, to persons who are not, and have not been, customers" of Rieke. Complaint at ¶17 (emphasis added). Like the contingent future events in *Bova*, these contingencies "are not sufficiently tangible or definite to meet the 'concrete and particularized' injury requirement" of *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). *Bova*, 564 F.3d at 1097. Customers might not approach BBeautiful seeking to purchase the packaging that BBeautiful uses for its own products. And BBeautiful's future plans to offer packaging assume that BBeautiful will be sufficiently successful with its existing business to enable it to expand into new product lines. Given that BBeautiful is presently in bankruptcy and is engaged in expensive litigation with Rieke, its future business prospects are uncertain. The Court finds that BBeautiful's claim for a declaration that it is entitled to sell stand-alone packaging is not ripe for adjudication.

     Rieke's motion to dismiss BBeautiful's claim for a declaration that it is entitled to sell packaging products is granted. If BBeautiful could have alleged any facts demonstrating that its packaging claims were ripe, it would have already done so. BBeautiful has already amended its Complaint once. In addition, the papers BBeautiful has filed in connection with its plan of reorganization also state only that BBeautiful *may* seek to sell packaging components in the future, without any indication that BBeautiful is selling packaging components at the present

time. Therefore, it is clear that at the present time, BBeautiful can allege no facts showing that its packaging claims are ripe. Accordingly, dismissal of the Complaint without leave to amend is appropriate. However, this does not mean that BBeautiful's packaging claims may not become ripe at some point in the future. Therefore, the dismissal is without prejudice to BBeautiful's ability to file a new complaint if and when its packaging claims become ripe. *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1142 (9th Cir. 2000) (dismissing an action without prejudice where the claims were not ripe).

## BBeautiful's Second Claim for Tortious Interference with Prospective Economic Advantage is Dismissed Without Leave to Amend

The elements of a claim for tortious interference with prospective economic advantage are as follows: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (2003). In addition, to

> establish a claim for interference with prospective economic advantage, therefore, a plaintiff must plead that the defendant engaged in an independently wrongful act. An act is not independently wrongful merely because defendant acted with an improper motive. As we said in *Della Penna*, "the law usually takes care to draw lines of legal liability in a way that maximizes areas of competition free of legal penalties." The tort of intentional interference with prospective economic advantage is not intended to punish individuals or commercial entities for their choice of commercial relationships or their pursuit of commercial objectives, unless their interference amounts to independently actionable conduct. We conclude, therefore, that an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.

*Id.* at 953–54.

The Complaint does not sufficiently allege the existence of an economic relationship with which Rieke interfered. The Complaint alleges that Rieke disrupted BBeautiful's relationship with Henkel, "a prospective business partner," and that Rieke disrupted BBeautiful's relationship with "other prospective customers … including Avon, Coty and L Brands." Complaint at ¶27. These *prospective* relationships are insufficient to state a claim. "The economic relationship must be either in the form of a contract or an *existing* relationship with an identifiable third party." *Dooley v. Crab Boat Owners Ass'n*, 271 F. Supp. 2d 1207, 1216–17 (N.D. Cal. 2003) (emphasis added). The fact that these entities are alleged to be long-standing industry contacts of Ms. Arminak is insufficient; there is no allegation that there was a previous relationship between the entities and BBeautiful.

In addition, the Complaint fails to allege that Rieke engaged in an independently wrongful act. BBeautiful argues that the allegation that Rieke violated the UCL furnishes the requisite independently wrongful act. However, as discussed below, the Court finds that the Complaint does not state a claim for violation of the UCL. Therefore, the alleged UCL violation cannot furnish the necessary independently wrongful act. *See CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1110 (9th Cir. 2007) (holding that an inadequately alleged UCL violation could not supply the requisite independently wrongful act).

The second claim is dismissed without leave to amend. Even if BBeautiful could file an amended complaint alleging facts showing that existing, rather than prospective, economic relationships were disrupted, BBeautiful could not overcome the hurdle of alleging that Rieke engaged in a wrongful act independent of the alleged interference. Accordingly, leave to amend would be futile.

**BBeautiful's Third Claim for Violation of the UCL is Dismissed Without Leave to Amend**

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." California Business and Professions Code §17200. BBeautiful maintains that the Non-Compete Provision is void pursuant to California Business and Professions Code §16600, which provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." BBeautiful argues that Rieke has violated the UCL by asserting the existence of the Restrictive Covenants, when the Restrictive Covenants are void and unenforceable and therefore do not exist under California law.

The Complaint does not state a claim for relief for violation of the UCL. First, the Non-Compete Provision is governed by New York law, and therefore cannot be invalidated by way of California law. However, even if the Non-Compete Provision somehow were subject to California law, it would not be void. California Business and Professions Code §16601 provides:

> Any person who sells the goodwill of a business, or any owner of a business entity selling or otherwise disposing of all of his or her ownership interest in the business entity, or any owner of a business entity that sells (a) all or substantially all of its operating assets together with the goodwill of the business entity, (b) all or substantially all of the operating assets of a division or a subsidiary of the business entity together with the goodwill of that division or subsidiary, or (c) all of the ownership interest of any subsidiary, may agree with the buyer to refrain from carrying on a similar business within a specified geographic area in which the business so sold, or that of the business entity, division, or subsidiary has been carried on, so long as the buyer, or any person deriving title to the goodwill or ownership interest from the buyer, carries on a like business therein.

Here, the Non-Compete Provision was entered into in connection with the sale of Associates to Rieke. *See* 2012 Purchase Agreement at §§9.2(a) (attached to Complaint as Ex. A). The 2012 Purchase Agreement provides: "Each Seller Group Member [i.e., the Arminaks] further acknowledges and agrees that the Restrictive Covenants are being entered into by it in connection with the sale by Seller of the Transferred Membership Interests and the goodwill of the Transferred Companies' business [] and not directly or indirectly in connection with such Seller Group Members' employment." Because the Non-Compete Provision was entered into in connection with the transfer of Associates' goodwill, the provision is enforceable pursuant to California Business and Professions Code §16601. Accordingly, the Non-Compete Provision does not violate the UCL.

In addition, BBeautiful's UCL claim fails because BBeautiful cannot show that it has "suffered injury in fact and has lost money or property as a result of unfair competition." California Business and Professions Code §17204. To make this showing, BBeautiful "must have either prior possession or a vested legal interest in the money or property lost." *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1172 (E.D. Cal. 2007), *aff'd sub nom. Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025 (9th Cir. 2009). Because BBeautiful admits that it is

currently not selling packaging products, it has no vested legal interest in the money lost as a result of Rieke's alleged interference with BBeautiful's business relationships.

    None of the facts alleged in the Complaint, which has already been amended once, give rise to a claim for violation of the UCL. Accordingly, the Court finds that leave to amend would be futile and dismisses the claim for violation of the UCL with prejudice.

### BBeautiful's Motion for Partial Summary Judgment is Granted

    Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Civil Rule 56 (made applicable to these proceedings by Bankruptcy Rule 7056). The moving party has the burden of establishing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is 'material' only if it might affect the outcome of the case[.]" *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The court is "required to view all facts and draw all reasonable inferences in favor of the nonmoving party" when reviewing the Motion. *Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004).

    Rieke does not dispute that BBeautiful is entitled to sell the Permitted Beauty Products, and is entitled to purchase packaging to use in manufacturing the Permitted Beauty Products. Rieke argues that BBeautiful lacks standing to seek a declaration that it is entitled to sell the Permitted Beauty Products, because there is no actual case or controversy for the Court to decide.[7] **[Note 5]**

    The Court finds that there is an actual controversy between BBeautiful and Rieke, and that BBeautiful has standing to seek declaratory relief. The November 22 Letter that Rieke issued to its customers stated that any business affiliated with Ms. Arminak was prohibited from competing with Rieke in the packaging business. Although the November 22 Letter did not state that BBeautiful was prohibiting from competing with Rieke in the finished beauty products business, the testimony of Ms. Arminak states that subsequent to issuance of the letter, BBeautiful has had difficulty selling its beauty products. *See* Arminak Decl. [Doc. No. 35] at ¶9 ("BBeautiful has recently faced difficulty in selling its products because of statements made by [Rieke]"). Based upon Ms. Arminak's testimony and upon the November 22 Letter, the Court finds that at least some of the entities who received the November 22 Letter were confused and incorrectly concluded that BBeautiful was not authorized to sell them finished beauty products. The Court finds that BBeautiful is entitled to declaratory relief to remediate this confusion.

    In making the finding that customers were confused by the November 22 Letter, the Court does not find that the November 22 Letter was misleading or failed to accurately describe the terms of the New York TRO. Rather, this confusion was likely the result of customers receiving

---

[7] Although the Court has analyzed BBeautiful's standing in the context of Rieke's motion to dismiss, that analysis required the Court to assume that all the well-pleaded allegations in the Complaint were true. A separate standing analysis is necessary in the context of BBeautiful's motion for summary judgment.

the letter, not spending the time to discern the precise terms of the injunction, and deciding in an abundance of caution to avoid conducting any business with BBeautiful.

In addition, in the New York Action, Rieke has taken the position that the New York TRO should be converted into a preliminary injunction that does not contain an exclusion for BBeautiful. *See* Reply Memorandum of Law in Support of Rieke-Arminak Corp. and Arminak & Associates, LLC's Motion for a Preliminary Injunction [Doc. No. 107, New York Action] ("Plaintiffs argue that any injunction must expressly exclude BBeautiful. Given that BBeautiful is not a party to the Agreements or to this litigation, there is no need to 'exclude' BBeautiful from any order entered by this Court.").[8] **[Note 6]** Although any preliminary injunction entered by the New York Court would, consistent with the New York TRO, presumably enjoin only the sale of packaging components, BBeautiful's customers could still be confused as to the scope of the injunction absent an express carve-out for BBeautiful. The posture of the dispute in the New York Action provides BBeautiful standing to seek declaratory relief before this Court.

Having found that BBeautiful has standing to seek declaratory relief, and noting that Rieke does not dispute that the Non-Compete Provision does not bar BBeautiful from selling the Permitted Products, the Court finds that BBeautiful is entitled to a declaration that it may sell the Permitted Beauty Products. The plain language of the Non-Compete Provision clearly permits BBeautiful to sell the Permitted Beauty Products.

## IV. Conclusion

The Court recommends that the District Court adopt all the findings of fact and conclusions of law set forth herein, and enter judgment as follows:

1) Enter judgment that BBeautiful is entitled to a declaration that it may (a) sell the Permitted Beauty Products and may (b) acquire packaging for the purpose of manufacturing the Permitted Beauty Products.

2) Dismiss BBeautiful's claim that it is entitled to a declaration that it may sell stand-alone packaging products, on the ground that the claim is not ripe for adjudication, with such dismissal being without prejudice to BBeautiful's ability to file a new complaint if and when the packaging claims become ripe; but deny BBeautiful leave to amend the existing complaint, based upon the finding that at the present time, BBeautiful can allege no facts showing that its packaging claims are ripe.

3) Dismiss with prejudice BBeautiful's claim for tortious interference with prospective economic advantage.

4) Dismiss with prejudice BBeautiful's claim for violation of the UCL.

---

[8] The Court may take judicial notice of the Reply Memorandum, even though it has not been filed in this Court (probably because the Reply Memorandum was submitted to the New York Court after the briefing deadlines before this Court had expired).

###

Date: March 8, 2017

Ernest M. Robles
United States Bankruptcy Judge